UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| JENNIFER D. MARSHALL, | |
| Plaintiff, | |
| v. | Action No. 3:08–CV–461 |
| DEANNE M. SEEKINS, | |
| Defendants. | |

MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff's Motion for Preliminary Injunction (Docket No. 3) filed July 28, 2003 and Plaintiff's Motion to Strike (Docket No. 12) filed August 21, 2008. For the reasons that follow, the Court will DENY both Motions.

I.     BACKGROUND

Jennifer D. Marshall ("Marshall") brought a Bivens[1] cause of action against DeAnne M. Seekins ("Seekins"), Acting Director[2] of the Hunter Holmes McGuire Veterans Administration Medical Center in Richmond, VA ("VAMC" or "Medical Center"), on July 22, 2008. The Complaint alleges Defendant has violated and continues to violate Marshall's "personal constitutional rights under the First and Fifth Amendments of the Constitution of the United States." Marshall bases the Bivens action on a letter from

---

[1] See Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

[2] Seekins, formerly the Associate Director of the Medical Center, assumed her position as Acting Director on or about July 1, 2008.

1

Seekins dated July 2, 2008 (the "Letter") that has banned Marshall from all properties of the VAMC, including two outpatient centers in Fredericksburg and Charlottesville. (See Pl.'s Ex. A.)

Marshall has had a relationship with the Medical Center since 1981 when the Medical Center hired her as a medical technologist. Marshall incurred an occupational injury in March 2005 and was awarded disability benefits. In July 2006, after Marshall removed and refused to return confidential personnel information ("Personnel Report"), VAMC terminated Marshall's employment. She has since appealed her removal before the Merit Systems Protection Board.

For approximately eight years, including the time since her removal as an active employee in 2006, Marshall has served as president of the American Federation of Government Employees ("AFGE") Local 2145. Acting as president of the Local 2145, Plaintiff has represented the roughly 1100 employees of the VA Medical Center who are AFGE members during bargaining negotiations with the Medical Center, regularly solicited non-members to join the Local 2145, and encouraged non-members, including volunteers, to participate in AFGE activities. Moreover, Marshall serves as a non-attorney representative of employees who have filed EEO or workers' compensation complaints against the Medical Center. Marshall claims to be named representative in approximately 114 EEO complaints and approximately 35 workers' compensation complaints.

Key to Plaintiff's complaint, the office of the Local 2145 is located on the grounds of the Medical Center. This fact notwithstanding, the Letter specifically prohibits Marshall from

entering "any part of the medical center including its Community Based Outpatient Clinics with the exception of necessary visits related to [her] personal Workers Compensation file." Under threat of citation and/or arrest, the Letter requires Marshall to make arrangements in advance for police escorts to and from approved locations of the Medical Center for matters related to her disabilities benefits and ordered her to immediately contact VAMC police to collect any personal items left on VAMC premises and return her badge and room keys. (See Pl.'s Ex. A.)

The parties dispute the impetus for the issuance of the Letter. According to Seekins, she issued the Letter in response to several incidents involving Marshall's abusive treatment of Medical Center employees and her refusal to obey "legitimate orders."[3] (Def.'s Resp. at 2.) Moreover, Defendant claims that prior to the Letter, the Medical Center had "engaged in every form of progressive discipline available to it, up to and including the plaintiff's removal from federal employment" and that subsequently banning Marshall completely from VAMC premises "was the last reasonable alternative to influence or limit the plaintiff's bad conduct." (Def.'s Resp. at 3.) Marshall disputes this assertion stating that the purpose of the ban is to hinder her advocacy on behalf of the Local 2145, silence her criticism of Seekins, and interfere with various constitutional rights. (Compl. at 8.)

---

[3] Defendant lists the following as representations of Plaintiff's conduct: "call[ing] the VAMC Staff Attorney a 'bitch,' refus[ing] orders not to be absent from work on official time, disrupting official VAMC meetings and proceedings, refusal to follow orders regarding conflicts of interest in her representational capacity, and refusal to obey legitimate demands to return confidential, privacy-protected personnel information, confidential patient health information, and (according to Plaintiff's admission) improperly disposing of confidential patient health information after demands for return of the original and all copies had been made." (Def.'s Resp. at 2-3.)

According to the Letter, Marshall attended the "Director's morning report" on Thursday, May 22, 2008, and picked up a document titled "Report of Patient's Condition and Nursing Activities" (the "Patient Health Report"). VMAC officials advised Marshall that the Patient Health Report contained confidential information to which she was not entitled, and a VAMC official instructed her to return the document immediately. After Marshall's refusal to return the document, a Medical Center employee, Dr. Huhman, unsuccessfully attempted to retrieve the Patient Health Report from Marshall.[4] Marshall has refused to return both the Patient Health Report and the Personnel Report (taken prior to her dismissal), even after several requests, both oral and written, to relinquish them; she stated in fact that she had disposed of the Patient Health Report in either of two trash dumpsters. (See Def.'s Resp. at 4.) Citing authority under Title 38, Section 1.218 of the Code of Federal Regulations,[5] the Letter states that Marshall's conduct on May 22, 2008 and her

---

[4] Marshall filed a claim against Dr. Huhman but later withdrew the allegations. Seekins includes the filing of this claim as an example of Marshall's disruptive behavior having the "effect of causing humiliation and embarrassment to the VMAC employee, disrupting his official work, and consuming his time in defending a meritless charge." (Def.'s Resp. at 4-5.)

[5] The regulation states in pertinent part,

> The head of the facility is charged with the responsibility for the enforcement of these rules and regulations. . . . [In response to c]onduct on property . . . . which otherwise impedes or disrupts the performance of official duties by Government employees. . . or the use of loud, abusive, or otherwise improper language . . . . the head of the facility . . . may cause the issuance of orders for persons who are creating a disturbance to depart the property. Failure to leave the premises when so ordered constitutes a further disturbance within the meaning of this rule, and the offender is subject to arrest and removal from the premises.

38 C.F.R. 1.218(a)(5)(2008).

4

continued presence at the Medical Center would "not promote the orderly functioning of th[e] medical center and would impede or disrupt the performance of official duties by [its] employees" and "give the impression that [Marshall's] egregious conduct is legitimate and acceptable to [VAMC's] employees and staff." (See Pl.'s Ex. A.); Cf. 38 C.F.R. § 1.218. According to Seekins, the improper disposal contributed significantly to the decision to impose the ban on Plaintiff. In addition to the ban, Seekins initiated multiple criminal action against Marshall which were subsequently dismissed.

Since the events on May 22, 2008, Marshall has requested a copy of the Patient Health Report on three separate occasions under the Freedom of Information Act ("FOIA"). VMAC officials have informed Marshall on each occasion that the information is exempt from FOIA disclosure. Also of note, on July 7, 2008, before filing complaint in this Court, Plaintiff filed a claim with the Federal Labor Relations Authority ("FLRA") based upon the Letter's ban.

II.  PLAINTIFF'S MOTION TO STRIKE

Plaintiff moves to strike a footnote in Defendant's Response. The footnote states in relevant part,

> Parenthetically, Ms. Marshall is not new to the U.S. Attorney's Office or to this Court. At a settlement conference in the case of Deneen Harris v. Anthony J. Principi, Civil Action No. 3:04CV00746-RLW conducted on April 25, 2005, Magistrate Judge Dennis W. Dohnal ordered court security officers to remove the plaintiff from his chambers and out of the Courthouse.

(Def.'s Resp. at 3 n.4.) Plaintiff argues that this footnote is inadmissible because it is irrelevant and its inclusion in the pleadings inherently violates the confidentiality of the

5

mediation process. Defendant, on the other hand, argues that the statement is admissible because it is relevant as to Plaintiff's ability to obey legitimate authority.

The Court finds no merit in Plaintiff's arguments. First, Plaintiff cannot demonstrate that this uncontested allegation is per se inadmissible. Plaintiff points to Local Civil Rule 83.6. The relevant part of the Rule states only, "The substance of communication in the mediation process shall not be disclosed to any person other than participants in the mediation process. . . ." E.D. Va. Loc. Adm. R. 83.6(E). The footnote Plaintiff takes issue with does not reveal the substance of any communication that occurred in that mediation—only that Marshall had to be removed from the session. Anyone present in the courthouse on April 25, 2005 at the time of the mediation could have very well observed the court security officers ("CSOs") summoned by the judge removing Marshall from the premises without compromising the confidential nature of the mediation process. Plaintiff presents, and this Court finds, no authority interpreting the language of Local Rule 83.6 to include the removal of a disruptive individual from a judge's chambers and the courthouse. The Rule is inapposite.

Second, the Court finds the statement in the challenged footnote relevant to the current proceedings. Relevant evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Unless excluded by the Constitution, congressional decree, or a federal rule prescribed by the Supreme Court, "[a]ll relevant evidence is admissible." Fed. R. Evid. 402. Marshall has argued that a less

6

restrictive alternative than the total ban should have been implemented by VMAC. Conversely, Defendant has suggested that Plaintiff's prior behavior demonstrates the inability or unwillingness to follow directives of legitimate authority, and, therefore, a less restrictive alternative would have been ineffective. The fact that Plaintiff refused follow instructions from a federal judge in that judge's chambers prompting her removal from the courthouse by CSOs tends to make it more probable that Marshall would be unable or unwilling to follow a less restrictive ban tailored by Defendant. The footnote is relevant and, absent some other valid basis for exclusion, admissible.

As such, the Motion to Strike shall be DENIED.

III.    PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

    A.    Standard for Granting a Preliminary Injunction

"A preliminary injunction is an extraordinary and drastic remedy . . . never awarded as of right." Munaf v. Geren, 128 S.Ct. 2207, 2219 (2008) (citing Yakus v. United States, 321 U.S. 414, 440 (1944)) (internal quotation marks omitted); accord In re Premier Automotive Servs., Inc., 492 F.3d 274, 284 n.2 (4th Cir. 2007). Before granting a preliminary injunction, the court must consider "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest." U.S. Dept. of Labor v. Wolf Run Mining Co., 452 F.3d 275, 280 (4th Cir. 2006) (citing Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193-94 (4th Cir. 1977)). The longstanding Fourth Circuit approach articulated in Blackwelder,

550 F.2d at 195, diminishes the importance of a plaintiff's likelihood of success on the merits where the balance of hardships weighs heavily in favor of the plaintiff. This Court, however, has noted caution regarding "the balancing of harms test" utilized in Blackwelder as "contrary to Supreme Court precedent." Toolchex, Inc. v. Trainor, No. 3:08CV236, 2008 WL 2323232, at *3 (E.D. Va. June 2, 2008) (citing Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 n.2 (4th Cir. 2002)). The Supreme Court recently clarified that a party must demonstrate a likelihood of success on the merits and that a court abuses its discretion by granting a preliminary injunction without considering that factor. See Munaf, 128 S.Ct. at 2219 (finding an abuse of discretion where the court refused to consider likelihood of success due to complex jurisdictional issues). The party seeking a preliminary injunction bears the burden of proving each factor favoring granting such relief. Toolchex, Inc., 2008 WL 2323232, at *3 (citing Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991)).

      B.     Subject Matter Jurisdiction

Prior to determining whether Plaintiff meets its burden in arguing for a preliminary injunction, the Court must first determine whether it has subject matter jurisdiction. A Bivens action, a judicially-created damages remedy designed to vindicate violations of constitutional rights by federal actors, is appropriate where "(1) Congress has not already provided an exclusive statutory remedy; (2) there are no 'special factors counselling hesitation in the absence of affirmative action by Congress'; and (3) there is no 'explicit congressional declaration' that money damages not be awarded." Hall v. Clinton, 235 F.3d

...

202, 204 (citing Bivens, 403 U.S. at 395-97) (internal citations omitted).

Marshall claims that until the final resolution of this matter she has no forum or remedy to vindicate her First Amendment rights other than this Court and a preliminary injunction. However, myriad cases have held that provisions under the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. 95-454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), provide the sole remedy for plaintiffs alleging constitutional violations related to federal employment. See, e.g., Bush v. Lucas, 462 U.S. 367 (1982) (refusing to allow a Bivens action where federal employee alleged violation of First Amendment rights); Schwieker v. Chilicky, 487 U.S. 412 (1988); Hall v. Clinton, 235 F.3d 202, 205-06 (4th Cir. 2000); Zimbelman v. Savage, 228 F.3d 367, 370 (4th Cir. 2000); Pinar v. Dole, 747 F.2d 899, 904-05, 909 (4th Cir. 1984). The Fourth Circuit noted as much in Wilton v. May & City Council of Baltimore, 772 F.2d 88, 89 n.1 (4th Cir. 1985) (citing Carter v. Kurzejeski, 706 F.2d 835 (8th Cir. 1983)). In Carter, a union and its members alleged that discharges violated the First Amendment. The Eighth Circuit held that the CSRA provided the sole remedy for the plaintiffs. Carter, 706 F.2d at 838-39. This clearly comports with the Fourth Circuit's reasoning in Pinar v. Dole, 747 F.2d at 910, 913, which held, "Congress clearly intended the CSRA to be the exclusive remedy for federal employees and the Court of Appeals for the Federal Circuit to be the sole forum for judicial review." In light of the comprehensive and constitutionally adequate remedial scheme established in the CSRA, it reasoned that the district court should not exercise its power to grant injunctive relief. Id. at 910. As such, the Federal Labor Relations Authority ("FLRA") constitutes the sole forum

competent to hear First Amendment challenges by federal employees against federal agencies.

Plaintiff distinguishes the cases on which Defendant relies based on the fact that she is not an employee alleging improper discipline by a federal employer. Marshall argues that she is precluded from bringing her individual constitutional claims to the FLRA because of her status as a non-employee. Plaintiff instead analogizes her situation to that of the Transportation Safety Authority ("TSA") employee who was the plaintiff, in addition to the union, in AFGE Local 1 v. Stone, 502 F.3d 1027 (9th Cir. 2007). There, the court permitted a Bivens action to vindicate TSA employees' alleged First Amendment rights.

Marshall's reliance on Stone is misplaced. In Stone, the plaintiff was disciplined for engaging in union activities on the job before receiving approval from TSA management. Id. at 1030. The court there held that the fired TSA employee was entitled to a forum in the district court because there existed neither an administrative forum like the FLRA, nor an administrative remedy for him under the Aviation and Transportation Security Act ("ATSA") or the CSRA. Id. at 1036-37.

Contrary to Plaintiff's contentions, the FLRA has exclusive jurisdiction as to her complaint, even though she is no longer a federal employee. The CSRA protects the right of employees of a federal agency to "form, join, or assist any labor organization." 5 U.S.C. § 7102 (2006). This right has been construed by the FLRA to include the right of a labor organization to designate a non-employee representative who will have access to an agency's premises in order to conduct representational activities. See Bureau of Indian

Affairs, 54 F.L.R.A. 1428, 1998 WL 34301482, at *8 (1998). Plaintiff serves as such a non-employee representative, and the rights Plaintiff seeks to vindicate derive from that role. Although Plaintiff argues that personal constitutional rights form the basis for her claim, she offers little besides her functioning as president of the Local 2145, her role as a non-lawyer representative in charges against VAMC, or the chilling of speech or association by employees of the Medical Center to define this personal right. Marshall repeatedly alleges that her advocacy and representation of employees provoked the ban. (See Pl.'s Mem. at 6 ("The VA Medical Center is seeking to ban Marshall from its property because Marshall is an advocate on behalf of those who are questioning the actions of the VA Medical Center.")); (Compl. at 5 ("Personal, physical access to the VA Medical Center, specifically including the Union Office, is essential to Marshall's proper and effective performance of her Union and individual representational duties and activities.")); (id. ("Seekins is well aware that Marshall's personal access to the VA Medical Center is essential to Marshall's proper and effective performance of her Union and individual representational duties and activities.")); (id. at 8 ("The true reasons that Seekins is barring Marshall . . . are (a) to silence or hinder Marshall's advocacy of membership in the Local 2145 and the pursuit of the Local 2145's goals; . . . (c) to prevent or interfere with Marshall's association with other Union members and non-member employees")); (Decl. of Marshall at ¶ 31 ("Local 2145 takes the position that it is entitled to all reports of occupational injuries suffered by members of the bargaining unit that Local 2145 represents; I therefore immediately took the position that Local 2145, including me, was entitled to a copy of the Report. . . .").)

Plaintiff's theory as to the "true reasons" for the ban suggests that the rights she asserts are not individual constitutional rights, but rather rights based on her position as president of the Local 2145. As explained in <u>Bureau of Indian Affairs</u>, the right of federal agency employees, such as the members of the AFGE Local 2145, to organize and to select a non-employee representative like Marshall comes from the CSRA. <u>See</u> 1998 WL 34301482, at *8. Therefore, the right of access to a federal agency's premises to conduct representational activities is a statutory right, not a constitutional one. <u>Id.</u> Further, this statutory right is not absolute since a union officer may be entirely banned from the premises if the employer has justification. <u>Id.</u> at *10. Thus, the alleged First Amendment right Marshall seeks to protect with an injunction does not exist.

In point of fact, Plaintiff has filed a complaint with the FLRA seeking a temporary restraining order against Defendant to vindicate this statutory right to access. (<u>See</u> Def.'s Ex. 11.) In her letter to the FLRA dated July 7, 2008, Marshall writes that if the FLRA is unable to grant the requested TRO or pursue the unfair labor practice charge, "I am requesting that the FLRA provide me (the Union) with a letter stating such in order for me to demonstrate that I have exhausted the administrative procedures. This is needed in order for the Union to pursue this matter in another forum." (<u>Id.</u>)

It seems clear that Plaintiff seeks to vindicate a right to advocate on behalf of the union and that she understands the FLRA provides the appropriate forum in which to pursue constitutional claims based on any constitutionally offensive effect the Letter has on her ability to perform her representational duties. To provide a parallel remedy would

contradict clear congressional intent "to make the government function more efficiently and effectively." U.S. Dept. of Justice, I.N.S. v. F.L.R.A., 995 F.2d 46 (5th Cir. 1993) (citing S. Rep., No. 95-969, 95th Cong., 2nd Sess. 4, reprinted in 1978 U.S.C.C.A.N. 2723, 2726).

The Court finds that it does not have subject matter jurisdiction to grant relief in this matter. Congress has provided remedies via the CSRA and has vested exclusive original jurisdiction in the FLRA. As such, Plaintiff cannot show that "Congress has not already provided an exclusive statutory remedy," Hall, 235 F.3d at 204, as required by the Fourth Circuit to maintain a Bivens action.

C.  Practical Jurisdictional Concerns

In sum, Marshall argues that the Court should provide her with a forum and injunctive relief because practical barriers preclude the FLRA from doing so.

Although, the FLRA provides the appropriate forum for Plaintiff's claims, she correctly states that the FLRA currently lacks the practical ability to provide her—or the Local 2145—relief. The FLRA Bulletin dated July 17, 2008 states,

> With only one Member, the Authority lacks a quorum to exercise its power to adjudicate cases under the Statute. Therefore, during the period that the Authority has only one Member, it will not be issuing final decisions in cases currently pending, or which will be filed, with the Authority. However, the Authority's Case Intake and Publication section will continue to exercise its delegated power to procedurally review and, where appropriate, dismiss cases filed with the Authority that do not satisfy case filing requirements under the Statute and the Authority's regulations.

FLRA Bulletin, July 17, 2008, http://flra.gov/news/pr08-07.html. Marshall, however, offers, and this Court finds, no authority that allows this Court to exercise jurisdiction simply based on a practical inability to obtain relief from the FLRA. "Federal courts are courts of limited

13

jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Moreover, "only Congress may alter a district court's subject matter jurisdiction," U.S. v. Hartwell, 448 F.3d 707, 717 (2006) (citing Kontrick v. Ryan, 540 U.S. 443, 453 (2004)), and it has not done so with regard to the rights Marshall seeks to vindicate.

The Court notes, without deciding, that Plaintiff would be unlikely to satisfy the requirements necessary to obtain a preliminary injunction from this Court if it did have jurisdiction. Plaintiff seeks to invoke the Court's equity jurisdiction, but Defendant has a strong argument that Marshall comes to the Court with unclean hands, which would disqualify her from the remedy she seeks. See Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd., 970 F.2d 273, 281 (7th Cir. 1992) ("[A] party coming before a court in equity must come with clean hands."). Marshall's behavior, including commandeering, keeping, and improperly disposing of confidential patient information despite repeated orders to return the Personnel Report and Patient Health Report sullies her hands such that the Court would effectively be rewarding her illegal behavior by granting a preliminary injunction. Further, Plaintiff would be unlikely to satisfy the four-part standard laid out by the Fourth Circuit to invoke the extraordinary remedy she seeks.

Plaintiff's Motion for Preliminary Injunction will be DENIED.

## IV. CONCLUSION

In conclusion, the Court finds no reason to strike the challenged footnote. Moreover,

the Court finds that the CSRA provides the appropriate remedy for Plaintiff's asserted First Amendment right, the FLRA provides the appropriate forum, and this Court lacks subject matter jurisdiction to enjoin Defendant's ban.

For the foregoing, Plaintiff's Motion to Strike and Motion for Preliminary Injunction are DENIED.

It will be SO ORDERED.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

ENTERED this  30th  day of September 2008